**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Dugan, | No. CV-23-02540-PHX-SHD |
| Plaintiff, | **ORDER** |
| v. | |
| Charles Schwab & Company Incorporated, | |
| Defendant. | |

The parties were before the Court for a Discovery Dispute Hearing on April 24, 2025 to address discovery disputes raised in Plaintiff Robert Dugan's Second Motion for Telephonic Discovery Dispute Conference, (Doc. 66). At the hearing, the Court addressed one disputed discovery response and ordered the parties to (a) submit additional briefing regarding the scope of comparator evidence responsive to Requests Nos. 4 and 5 in Dugan's Second Set of Request for Production, and (b) submit a joint report after meeting and conferring on Interrogatory No. 2 in Dugan's Second Set of Interrogatories and Requests Nos. 4 and 10 in Dugan's Second Set of Requests for Admission. (Doc. 69.) The Court has received and reviewed the parties' Joint Motion Re: Second Discovery Dispute, (Doc. 72), as well as Defendant's Response to Court Order setting forth the requests and responses at issue verbatim, (Doc. 84). The Court enters the following orders on the disputed discovery requests.

**Second Set of Requests for Production Nos. 4 and 5:** The dispute over these requests concerns the scope of comparator evidence Defendant Charles Schwab and Co.,

Inc. ("Schwab") must produce. In its Order resolving the first discovery dispute between the parties, the Court ruled that Dugan was entitled to discover evidence concerning comparators and allowed Dugan to engage in follow-up discovery to identify similarly situated employees. (Doc. 65 at 3.) The Court issued its ruling in the context of Schwab's objection to the production of *any* comparator evidence and did not expressly address the issue presented here, namely the scope of discovery to which a plaintiff is entitled with respect to comparators.

Rule 26(b)(1) governs the scope of discovery and provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Importantly, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* "District courts have broad discretion in determining relevancy for discovery purposes." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citation omitted).

Dugan's Request for Production 4 seeks "disciplinary records (including warnings, suspensions, performance improvement plans, and terminations) for employees accused of alcohol-related behavior from January 1, 2018, to the present, including but not limited to incidents occurring at or related to work-sponsored events, travel, client engagements, or company functions" and "records reflecting the investigation, findings, and decision-making process for each case, including exculpatory evidence considered." (Doc. 84-1 at 2–3.) Request for Production 5 seeks "redacted termination records for employees terminated for violations of Schwab's 'behavior policy' or equivalent workplace conduct policies from January 1, 2018, to the present, including records showing the specific policy violated, reason for termination, and whether the terminated employee was given an opportunity to respond or appeal." (*Id.* at 3.) Schwab's responses limited these records to

- 2 -

1  employees who reported to Dugan's former manager. (Doc. 72 at 1.)

2  Dugan argues that the Ninth Circuit allows discovery on broad comparator evidence "even when comparators are not identical in all respects." (*Id.* at 2.) He claims these requests are highly relevant because Schwab's stated reason for terminating him was for "Failure to Adhere to Company Policy – Non-Sales Practice Related." (*Id.* at 3 (emphasis omitted).) Thus, Dugan argues that this broad language is about "Schwab's workplace behavior standards," "does not reference any specific incident or manager," and instead implicates company-wide expectations and policies. (*Id.*)

3  Schwab counters that it properly limited its response to employees who reported to Dugan's supervisor—"the relevant decision-maker in this case"—because under Ninth Circuit precedent, comparators "must be similarly situated in all material respects." (*Id.* at 4 (citing *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006).) Schwab argues that to meet this standard, "coworkers must have been dealt with by the same supervisor, subjected to the same standards, and engaged in similar conduct." (Doc. 72 at 4.)

4  Schwab's definition of similarly situated employees is too narrow. *See Hawn v. Exec. Jet Mgmt. Inc.*, 615 F.3d 1151, 1157 (9th Cir. 2010) (noting the district court erred in imposing a strict "same supervisor" requirement). The "similarly situated" inquiry is a flexible one. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1115 (9th Cir. 2011) ("It is not an unyielding, inflexible requirement that requires near one-to-one mapping between employees because one can always find distinctions." (quotation marks omitted)). "The employees' roles need not be identical; they must only be similar in all material respects." *Hawn*, 615 F.3d at 1157 (quotation marks omitted). "Materiality will depend on context and the facts of the case." *Id.* Generally, "individuals are similarly situated when they have similar jobs and display similar conduct." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003).

5  The Court also notes that the cases Schwab cites in support of its definition of "similarly situated" address this issue at the summary judgment stage. (*See* Doc. 72 at 4.)[1]

---

[1] *See Vasquez*, 349 F.3d at 641 n.17; *Hargrow v. Fed. Express Corp.*, 2006 WL 269958, at *5 (D. Ariz. 2006); *Lewis v. City of Union City*, 918 F.3d 1213, 1227–28 (11th

- 3 -

In contrast, at the discovery stage, requests "cannot and need not be perfectly tailored to the subset of individuals that will ultimately be deemed 'similarly situated' by a trier of fact," as this would "pose an insurmountable hurdle to obtaining relevant comparator evidence and ignore the liberal construction of 'relevancy' applied at the discovery stage." *Davis v. E. Idaho Health Servs., Inc.*, 2017 WL 1737723, at *4 (D. Idaho 2017); *see also U.S. E.E.O.C. v. Mattress Firm, Inc.*, 2014 WL 7336089, at *6 (D. Nev. 2014) (finding it would be "premature" at the discovery stage to make "findings regarding which employees are or are not similarly situated").

*Davis* is instructive. In that case, the court considered a plaintiff's request for production of comparator evidence after being terminated for violating a company policy. 2017 WL 1737723, at *1. The court found that while similar job duties and titles may be relevant in some cases, "where employees are disciplined not for poor performance but for misconduct that violates a company-wide policy, differences in job function and rank are less material." *Id.* at *3. Because the plaintiff "was disciplined not for bad performance but for violating a company-wide time card policy," all employees across the defendant's company "who were subject to the company time card policy [were] potential comparators." *Id.* The court also noted that while a common supervisor may be relevant, two employees having different supervisors becomes less relevant when "personnel farther up the chain of command are involved," which there was evidence of in that case. *Id.* Importantly, the plaintiff's request for production focused on records from employees who had engaged in *similar* violations of company policy. *See id.* (plaintiff sought "records of disciplinary actions taken against other [company] employees for time card violations"); *see also Beck v. United Food & Com. Workers Union, Loc. 99*, 2005 WL 2122317, at *5 (D. Ariz. 2005), (finding two employees were similarly situated where both allegedly used profanity in violation of the company's rules of conduct), *aff'd*, 506 F.3d 874 (9th Cir. 2007).

Applying the same rationale here, because Dugan was terminated for allegedly

Cir. 2019).

- 4 -

violating company policies, other employees who were disciplined or terminated for engaging in similar violations of company policies are potential comparators and thus these records are relevant to Dugan's claims. Whether these potential comparators have the same supervisor is less relevant here, as Dugan broadly alleges that "Defendant" (Schwab) terminated him and Schwab itself has alleged that employees other than Dugan's supervisor were involved in the events leading up to Dugan's termination, such as Schwab's Business Development Officer. (Doc. 16 at 2, 4.) Therefore, the Court will require Schwab to respond to Request for Production No. 4. The Court will also require Schwab to respond to Request for Production No. 5, except that Schwab may limit its response to records of employees terminated for alcohol-related behavior in violation of Schwab's behavior or conduct policies.

Accordingly, Schwab shall, within 20 days of this order, respond to Requests for Production Nos. 4 and 5 (with the Court's limitation on Request for Production No. 5). To the extent the response requires the disclosure of confidential or private information, Schwab may move for entry of an appropriate protective order.

**Interrogatory No. 2 ("Second Set of Interrogatories"):** Dugan claims that Schwab insufficiently responded to this interrogatory, which states in pertinent part: "State why Defendant previously denied in its discovery responses or other statements that Plaintiff disclosed a disability, when Defendant has now produced documentation proving Plaintiff's disclosure." (Doc. 84-1 at 6–7.) Schwab responded to this interrogatory as follows:

> Defendant denied that Plaintiff disclosed a disability in its prior discovery responses because Plaintiff never disclosed a disability during his employment to Defendant. Plaintiff never disclosed a disability to Judd Wagner, the relevant decision maker in this case, during his employment, as that term is defined under the Americans with Disabilities Act. Plaintiff disclosed only that he took a 'couple of Xanax' before boarding his flight to San Diego, California. Moreover, the CC-305 Form shows only that Plaintiff marked a box stating: 'Yes, I have a disability, or have a record/history of having a disability.' The CC-305 Form does not disclose any disability to Defendant, and Mr. Wagner never had access to the CC-305 Form completed

by Plaintiff.

(Doc. 72 at 6–7.) Dugan argues that Schwab's response is factually incomplete or incorrect, and therefore requests an amended response. (*Id.* at 5.) Schwab maintains that its answer is proper because, in its view, Dugan never made a disability disclosure. (*Id.* at 7.) The Court finds that Schwab's response satisfies Rule 33(b)(3). Accordingly, Schwab need not amend its response. If Dugan ultimately establishes that Schwab failed to supplement its response to ensure completeness and accuracy, he may be entitled to relief under Rule 37(c)(1).

**Second Set of Requests for Admission No. 4:** Dugan claims that Schwab insufficiently responded to this request, which states: "Admit that Defendant denied in written discovery responses that Plaintiff disclosed a disability during the hiring process and later produced documentation proving that Plaintiff had disclosed a disability, contradicting its prior denial." (Doc. 72 at 7.) Schwab denied the request for Admission, and explains that it did so because, in its view, Dugan did not disclose a disability as that term is defined in the Americans with Disabilities Act. (*Id.*) Dugan asserts that Schwab's denial of this request is factually incorrect and requests an amended answer. (*Id.* at 6.) Dugan is not entitled to an amended answer because the Court finds Schwab's answer compliant with Rule 36(a)(4). If Dugan ultimately proves that Schwab's answer is incorrect, he may be entitled to relief under Rule 37(c)(2).

**Second Set of Requests for Admission No. 10:** Dugan claims that Schwab insufficiently responded to this request, which states: "Admit that Plaintiff disclosed to Defendant that he was prescribed anti-anxiety medication before his termination." (Doc. 72 at 7.) Schwab denied the request for Admission, and explains that it did so because, in its view, the photo of the medication bottle does not establish that Dugan was actually prescribed anti-anxiety medication because it does not indicate "when it was prescribed [and/or] who prescribed it." (*Id.*) Dugan appears to assert that Schwab's denial of this request is factually incorrect, and although he does not specifically state that he seeks an amended answer, the Court believes that is what he is requesting. (*Id.* at 6.) As with RFA

- 6 -

1  No. 4 above, the Court finds that Dugan is not entitled to an amended answer because
2  Schwab's answer complies with Rule 36(a)(4).  If Dugan ultimately proves that Schwab's
3  answer is incorrect, he may be entitled to relief under Rule 37(c)(2).

4  **IT IS SO ORDERED**.

5  **IT IS FURTHER ORDERED** that the deadline for completion of discovery
6  relating solely to Second Set of Request for Production 4 and 5 is extended to **July 11,**
7  **2025**, and the deadline for filing dispositive motions is extended to **August 15, 2025**. All
8  other deadlines set forth in the Rule 16 Scheduling Order issued April 9, 2024, (Doc. 19),
9  are affirmed.

10  Dated this 13th day of June, 2025.

_____
Honorable Sharad H. Desai
United States District Judge